Alisha **BRONK** and Monica **Jay**, Plaintiffs–Appellants,

v.

Bernhard **INEICHEN**, Defendant–Appellee.

No. 94–2882.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 9, 1995.

Decided May 11, 1995.

Jeffrey Spitzer–Resnick (argued), Madison, WI, for plaintiffs-appellants.

Barrett J. Corneille (argued), Mary L. McDaniel, Bell, Metzner, Gierhart & Moore, Madison, WI, for defendant-appellee.

Before FAIRCHILD, CUMMINGS and CUDAHY, Circuit Judges.

CUMMINGS, Circuit Judge.

After a brief but contentious tenancy, plaintiffs Alisha Bronk and Monica Jay vacated their Madison, Wisconsin, apartment and brought suit against their former landlord, Bernhard Ineichen. Plaintiffs, two profoundly deaf women, alleged that defendant Ineichen had discriminated against them in violation of the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, as amended by the Fair Housing Amendments Act of 1988 ("FHAA");[1] Wisconsin state discrimination law, Sec. 101.22 Wis.Stat.Ann.;[2] and the

1. The Fair Housing Act reads as follows, in pertinent part:

[I]t shall be unlawful— ...
(f)(1) To discriminate in the sale or rental, or otherwise to make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—
    (A) that buyer or renter.... [or]
(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—
    (a) that person....
(3) For purposes of this subsection, discrimination includes— ...

(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling....
42 U.S.C. § 3604.

2. The Wisconsin state statute provides that:
If an individual's vision, hearing or mobility is impaired, it is discrimination for a person to refuse to rent or sell housing to the individual, cause the eviction of the individual from housing, require extra compensation from an individual as a condition of continued residence in housing or engage in the harassment of the individual because he or she keeps an animal that is specially trained to lead or assist the

Madison housing discrimination ordinance, Sec. 3.23(4),[3] by refusing to allow them to keep a dog in their rented townhouse. A jury found otherwise, returning a special verdict of no liability against Ineichen. Plaintiffs subsequently moved for judgment as a matter of law or for a new trial, and now challenge on appeal the district judge's denial of these motions and certain of her evidentiary rulings. While the record demonstrates ample evidence to support the determination of no liability, we are concerned that the tendered jury instructions may have confused jury members by unnecessarily conflating local, state, and federal law. We therefore reverse and remand for a new trial.

## FACTS

Plaintiffs' history of conflict with the defendant dates back to the day they signed the townhouse lease in the summer of 1992. Frequent and varied disputes soon ensued, but the sorest of all subjects was a dog named Pierre. Bronk asked Ineichen when she signed the lease whether he would permit her and Jay to have a "hearing" dog,[4] but Ineichen refused to modify his no-pets policy. Shortly after plaintiffs took possession of the townhouse, Bronk's brother Keith arrived for a visit with Pierre and another dog, Debbie. Pierre, whom Keith allegedly had trained as a hearing dog, was to remain with plaintiffs. On discovering Pierre in the townhouse, Ineichen put his foot down; he quickly evicted Pierre, who went to Bronk's parents' home in Kenosha, Wisconsin.

Over the next few months, plaintiffs argued Pierre's case with Ineichen. There is some dispute as to how much of the dialogue Ineichen, a Swiss immigrant, actually comprehended (according to his testimony, not much), but the conversations involved repeated attempts to explain the distinction between mere house pets and hearing dogs. Bronk testified, for example, that she offered to show Ineichen a certificate proving Pierre's abilities but that Ineichen showed no interest. For his part, Ineichen threatened in writing to raise plaintiffs' rent and charge them an additional security deposit if they brought Pierre back to the townhouse, accused them of making trouble, and hinted that he would prefer them to find new living arrangements.

In November 1992, Bronk and Jay filed a complaint with the Madison Equal Opportunities Commission ("MEEOC") alleging that Ineichen had discriminated against them on the basis of both their gender and their disability. After a cursory investigation the MEEOC found probable cause to believe that Ineichen had discriminated against Bronk and Jay based on their disability (but no probable cause to support the sex discrimination claim) and sought to enjoin Ineichen from enforcing his no-pets policy against them. Ineichen reluctantly conceded and did not resist the injunction, which subsequently was issued on December 23, 1992. Relations between landlord and tenants never recovered, however, and in March 1993, after both women lost their jobs in Madison, Bronk and Jay relocated to Kenosha. Thereafter they

individual with impaired vision, hearing or mobility if all of the following apply:
    a. Upon request, the individual shows to the lessor, seller or representative of the condominium association credentials issued by a school recognized by the department as accredited to train animals for individuals with impaired vision, hearing or mobility....

101.22(2r)(bm) Wis.Stats. (1994).

**3.** The Madison Equal Opportunities Ordinance, Sec. 3.23(4)(h), forbids landlords:
    to charge a higher price or to assess an extra charge, or otherwise to deny or withhold from any eyesight impaired, hearing impaired, or mobility impaired person such housing because that person owns a guide or service animal. Provided that:

    1. The tenant may be charged for any damages caused by the animal ...
    2. The landlord is not required to make modifications to the premises....
    4. The animal's owner may be required to provide current proof that the animal has successfully passed a course of training at a bona fide school for training such animals.

Sec. 3.23(4)(h), reprinted in Pl.App. at 13.

**4.** A "hearing" dog is trained to assist deaf individuals in their daily activities. The skills of such dogs can vary; Pierre allegedly was trained to alert his owners to the ringing of the doorbell, telephone or smoke alarm, and to carry notes. Pl. Br. at 3.

brought the instant suit for damages in federal court.

At trial, defense counsel for Ineichen conceded his client's sour disposition as well as his unyielding refusal to allow Pierre in the townhouse. Nevertheless, he argued, Ineichen's obduracy did not violate plaintiffs' rights or any of the applicable statutes for the simple reasons that Pierre was not a hearing dog and plaintiffs did not have a legitimate need for him. The defense tendered evidence that Pierre had received no training beyond that purportedly provided by Keith Bronk, an amateur with no demonstrated experience in training hearing dogs; that contrary to Bronk's deposition testimony, no facility had ever certified Pierre as a hearing dog; and that the various affidavits produced by plaintiffs which set forth Pierre's assistive functions were contradictory as to what he could actually do. Maria Merrill, the women's former roommate, testified that in a brief encounter with Pierre before he was shipped off to Kenosha she did not see any evidence he was trained. An expert witness for the defense testified that intensive, professional schooling and isolation from other animals (both of which Pierre concededly lacked) were prerequisites for a hearing dog. The defense also attempted to undermine plaintiffs' claim that they needed Pierre's assistance and suffered without it. Under cross examination, plaintiffs acknowledged that they had lived together on several previous occasions in other apartments, and had never before demanded or had access to a hearing dog.

At the close of the evidence, the district judge instructed the jury regarding the claims against Ineichen. Although the plaintiffs had asserted violations of state and municipal equal protection ordinances as well as federal law, the jury did not render separate verdicts on each claim. Instead, they received a two-question special verdict form on liability that asked only whether Ineichen had discriminated against plaintiffs by failing to reasonably accommodate their disability. After deliberation, the jury returned with an answer of "no" as to both plaintiffs.

## ANALYSIS

Plaintiffs raise several challenges to both the trial procedures and its result. Initially they contend that Ineichen's absolute refusal to allow Pierre in the townhouse required the district judge to issue judgment in their favor on the federal claim despite the adverse jury verdict. Acknowledging that judgment as a matter of law is appropriate "only when there can be but one conclusion from the evidence" and inferences reasonably drawn therefrom, *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 515 (7th Cir.1993), plaintiffs contend that evidence supported the sole conclusion that Ineichen would have rejected their request to have Pierre live with them under any circumstances. That, they contend, should have ended the jury's inquiry.

The proper focus of this trial, however, was not simply the motivation behind Ineichen's actions, but the import of these actions: regardless of his cantankerous or even malevolent attitude, did Ineichen violate the FHAA? The amended statute under which plaintiffs claim a violation bars discrimination "against any person in the terms, conditions, or privileges of ... rental ... of a dwelling ... because of a handicap of.... that ... renter," and defines discrimination as, among other things, "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(2). Two adjectives, "reasonable" and "necessary," figure prominently in this definition, modifying both the term "accommodations" and Ineichen's obligations under the law.

The statute is worded as a broad mandate to eliminate discrimination against and equalize housing opportunities for disabled individuals. The House Report on the FHAA identifies a "clear pronouncement of a national commitment to end the unnecessary exclusion of persons with handicaps from the American mainstream," H.R.Rep. No. 711, 100th Cong., 2d Sess. 18, U.S.Code Cong. & Admin.News 1988, pp. 2173, 2179, and adds that "the right to be free from housing discrimination is essential to the goal of independent living." *Id.* Implicit nonetheless in

the text of the FHAA is the understanding that while reasonable accommodations to achieve necessary ends are required, some accommodations may not be reasonable under the circumstances and some may not be necessary to the laudable goal of inclusion. The requirement of reasonable accommodation does not entail an obligation to do everything humanly possible to accommodate a disabled person; cost (to the defendant) and benefit (to the plaintiff) merit consideration as well.[5] *United States v. Village of Palatine,* 37 F.3d 1230, 1234 (7th Cir.1994) ("determining whether a requested accommodation is reasonable requires, among other things, balancing the needs of the parties involved."); see also *Vande Zande v. State of Wisconsin Dep't of Administration,* 44 F.3d 538 (7th Cir.1995) (employer not required under Americans with Disabilities Act to make unreasonable accommodations, in the sense of cost exceeding benefit). Similarly, the concept of necessity requires at a minimum the showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability.

■ Were it acknowledged by the parties in this case that Pierre was a hearing dog providing needed assistance to the plaintiffs, this case might be susceptible to determination as a matter of law. Balanced against a landlord's economic or aesthetic concerns as expressed in a no-pets policy, a deaf individual's need for the accommodation afforded by a hearing dog is, we think, *per se* reasonable within the meaning of the statute.[6] Pierre's skill level, however, was hotly contested, and there was ample evidence to support a jury determination in favor of the defendant. Other than their own protesta-

tions and self-serving affidavits which were undermined at trial, plaintiffs offered no evidence that Pierre had ever had any discernible skills. The defendant, on the other hand, introduced evidence that Pierre was not a hearing dog—the testimony of plaintiffs' former roommate and the defense expert—and impeached plaintiffs on a number of aspects of their testimony including the claim that Pierre had been certified at a training center. Given this level of uncertainty and conflicting evidence about Pierre's training level, it was well within the province of a rational jury to conclude that Pierre's utility to plaintiffs was as simple house pet and weapon against cranky landlord, not necessarily in that order. If Pierre was not necessary as a hearing dog, then his presence in the townhouse was not necessarily a reasonable accommodation.

■ Deference to the jury's conclusions in this matter, however, is not absolute if there is a possibility that jurors were influenced by improper considerations or by a misunderstanding of the applicable law. This brings us to plaintiffs' request for a new trial, the second and sounder basis for their appeal. Regardless of whether there was enough evidence to sustain a jury verdict of no liability against the defendant, plaintiffs allege that the verdict actually reached in this case was fatally tainted by improper jury instructions.

In reviewing jury instructions, this Court seeks "to determine if the instructions as a whole were sufficient to inform the jury correctly of the applicable law. We construe jury instructions in their entirety and not in artificial isolation and reverse only when the jury's comprehension of the issues is so misguided that a litigant is prejudiced." *Mayall*

---

5. As such, plaintiffs' reliance on cases involving housing discrimination on the basis of race are inapposite. The concept of reasonable accommodation has meaning only when an accommodation is required; in race discrimination cases, it is not accommodation but equal treatment that is mandated, and the notion that a defendant could explain away facially discriminatory behavior as reasonable under a cost-benefit analysis is ludicrous.

6. In reaching this conclusion we are guided by the regulations instituting the provisions of the FHAA. 24 C.F.R. § 100.204(b), promulgated by

the Department of Housing and Urban Development ("HUD"), gives two examples of reasonable accommodation: the first is that of a blind applicant for rental housing who wishes to keep her seeing eye dog in a building with a no-pets policy. Clearly, the situation of a deaf resident who wishes to keep a hearing dog is analogous. With respect to the present situation, however, the example begs the question of whether Pierre was a hearing dog, in which case he falls directly within the scope of the regulations; or was merely a house pet, in which case the regulations have no explicit application to him.

*v. Peabody Coal Co.,* 7 F.3d 570, 573 (7th Cir.1993) (citations and internal quotations omitted). Such reversals are rare, because this Court generally proceeds with caution in overturning a verdict simply because an element of the applicable law may have been stated with less than perfect clarity. "[T]he attempt by judges to evaluate the impact of specific instructions on a jury's verdict is speculative and quite likely to be mistaken." *Needham v. White Laboratories, Inc.,* 847 F.2d 355, 360 (7th Cir.1988); see also *Walsh v. Emergency One, Inc.,* 26 F.3d 1417, 1420 (7th Cir.1994). On occasion, where the instructions are central and the error potentially dispositive, we are more concerned with the jury's probable interpretive mistake than with our own. "[W]hen the instructions as a whole give the jury a misleading impression or inadequate understanding of the law, a new trial is warranted." *DePaepe v. General Motors Corp.,* 33 F.3d 737, 743 (7th Cir.1994) (citations and internal quotations omitted).

As noted above, the district court in this case instructed the jury as if there were just one cause of action rather than three. Thus, after deciding that the appropriate question for the jury was whether or not Ineichen "discriminated against [the plaintiffs] by failing to reasonably accommodate [their] disability," the district judge combined requirements of local, state, and federal law in instructing the jury regarding the import of these terms:

> It is discrimination for a landlord to refuse to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford a tenant equal opportunity to use and enjoy a dwelling.
>
> Additionally, it is discrimination to refuse to rent to, or engage in the harassment of, an individual with impaired hearing because the individual keeps an animal that is specially trained to assist that individual.
>
> It is not discriminatory or unreasonable for a landlord to require a tenant wishing to keep a hearing dog to show the landlord training credentials from a school. Also, it

is not discriminatory or unreasonable for the landlord to request the tenant to accept liability for sanitation with respect to the dog and liability for damages to the premises caused by the dog. However, a landlord cannot require an additional security deposit for a hearing dog that has credentials issued by an accredited training school.

Tr. of Jury Instructions 4–5.

These instructions are a muddle. They begin with a clear statement of federal law, the reasonable accommodation requirement, which finds its echo in both the Wisconsin statute and the Madison ordinance. Fair enough: but the federal standard stops there, without providing further guidance as to what accommodations are considered reasonable. As we stated above, this determination properly belongs to the jury, which is free to consider all of the evidence—the defendant's costs, the plaintiffs' benefits, the credibility of parties' assertions as to each—in reaching a decision. Just as judgment as a matter of law in favor of plaintiffs would unfairly deprive the jury of its appropriate factfinding mission in this case, so too would judgment as a matter of law against them.

Unfortunately, the instructions took matters out of the jury's hands. Instead of allowing jurors to evaluate Ineichen's behavior in order to determine its legal significance, the district court fleshed out the concept of "reasonable accommodation" with standards borrowed from state and local law. The jury instructions thus implied that as a matter of law it was reasonable for Ineichen to demand Pierre's training credentials from a school, or to make Pierre's residence contingent on plaintiffs' accepting responsibility for damages caused by their dog.[7] A jury could logically infer from this that without school training, a dog cannot be a reasonable accommodation.

The federal statute, however, does not say any of these things, and there is no basis for imputing them into a text that is silent on the subject. While it is true that reasonable accommodation must have some meaning in

---

**7.** Ineichen did neither of these things, but the jury may well have applied the instruction's

"rule" regarding reasonable conduct to the facts of this case.

the context of this case, we have already spelled out that meaning. The accommodation must facilitate a disabled individual's ability to function, and it must survive a cost-benefit balancing that takes both parties' needs into account. On one side of the equation is the degree to which Pierre aids the plaintiffs in coping with their disability. Professional credentials may be part of that sum; they are not its *sine qua non*. Plaintiffs must have been allowed to argue that by dint of Keith Bronk's efforts, Pierre accumulated enough skills so that he could actually aid in the daily functions of a deaf person. An instruction that elevates specific levels of training to *per se* reasonable status instead of allowing the jury to evaluate Pierre's abilities and assign its own weight to his lack of schooling essentially forecloses that argument.

The effect of the misleading jury instruction may have been compounded by the defense's closing argument, which centered on the schooling question. See *Stuart Park Associates Ltd. v. Ameritech Pension Trust*, 51 F.3d 1319, 1324 n. 1 (7th Cir.1995) (court can examine rest of trial in assessing impact of instructions); *Smith v. Chesapeake & Ohio Ry. Co.*, 778 F.2d 384, 389 (7th Cir.1985) (same). In closing, counsel for Ineichen stated:

> You will also hear, ladies and gentlemen, when the Judge reads you the law, that it's not unreasonable for an apartment-owner landlord to require a tenant, wishing to keep a hearing dog, to show the landlord training credentials from a school. That's what the law says, ladies and gentlemen. If Bernhard Ineichen would have been smart enough or a little bit more guileful and wanted to discriminate against deaf people, he could have stopped them right there, because this dog wasn't trained by any school, and they admit that.

(Tr. Vol. 7 at 14). This argument may well have crystallized the jury's erroneous belief that if Pierre had no schooling he could not as a matter of law have been a reasonable accommodation.[8] This Court thus must vacate the jury verdict based on an erroneous instruction.

Plaintiffs also challenge several evidentiary rulings made by the district judge prior to and during trial. Namely, plaintiffs argue that the district court erred in excluding evidence regarding the investigation conducted by the Madison EEOC and the resulting, uncontested injunction issued against Ineichen in December 1992. They also submit that the trial judge should not have allowed testimony from the defense expert regarding training standards for hearing dogs, but should have allowed them to present Keith Bronk, who allegedly trained Pierre, as a rebuttal witness to counter the expert's conclusions.

■ Our inquiry in evaluating these discretionary rulings is limited. *Crossley v. General Motors Corp.*, 33 F.3d 818, 821 (7th Cir.1994); *Walsh v. Emergency One, Inc.*, 26 F.3d 1417, 1420 (7th Cir.1994). The relevant inquiry is "not whether we would have ruled the same way but rather whether any reasonable person would have agreed with the trial court." *Holmes v. Elgin, Joliet & Eastern Ry. Co.*, 18 F.3d 1393, 1397 (7th Cir. 1994). As such, we have little difficulty in approving the decisions of the district judge. Evidence concerning the MEEOC investigation and subsequent court-ordered injunction, the judge properly ruled, were more prejudicial than probative considering the one-sided nature of those proceedings. When the district court has already balanced prejudice and probativeness in making an evidentiary ruling, this Court is especially reluctant to intervene. *Berry v. Deloney*, 28 F.3d 604, 608 (7th Cir.1994). Testimony from an expert in hearing dog training was more than appropriate under the circumstances, where

---

**8.** *Plaintiffs' counsel failed to counter this argument during his rebuttal—an understandable omission, given that he had unsuccessfully voiced his position during the jury instruction conference. See Tr. Vol. 6 at 2–A–100 to 2–A–116, and plaintiffs' objections at 2–A–115 and 2–A–116. During that conference, plaintiffs' counsel ar-* gued that "federal law says you look at the individual situation and is that or is that not a reasonable accommodation." *Id.* at 2–A–115. The district judge made it clear, however, that she thought elements of the state and local ordinances could "fairly be read into federal law." *Id.* at 2–A–114.

Pierre's level of ability was a potentially crucial factor in liability determination; and the fact emphasized by plaintiffs, that the expert had never examined Pierre, is irrelevant when this information was clearly elicited at trial. Finally, the judge did not abuse her discretion in excluding Keith Bronk's testimony as a rebuttal witness after plaintiffs failed to name him on their pre-trial witness list pursuant to the district court's order. See Fed.R.Civ.P. 16, 26(a), 37(c); *Spray–Rite Service Corp. v. Monsanto Co.*, 684 F.2d 1226, 1245 (7th Cir.1982) (district court should consider prejudice or surprise to opposing party, ability of party to cure prejudice, likelihood of disruption, and moving party's bad faith or unwillingness to comply in ruling on motion to call witness not previously listed), affirmed, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775. It should have been clear to plaintiffs from the outset that Keith Bronk's testimony regarding Pierre's training might be significant; their failure to name him at the appropriate time cannot be laid at anyone else's doorstep.

### CONCLUSION

Judgment against plaintiffs is vacated, and a new trial is ordered. The parties will bear their own costs; on remand, Circuit Rule 36 will apply.