PROVISO ASSOCIATION OF RETARD-
ED CITIZENS, an Illinois Not-for-Prof-
it Corporation, and Charles Petty and
Donna Lee Fitzner as individuals, Plain-
tiffs,

v.

VILLAGE OF WESTCHESTER, ILLI-
NOIS, a Municipal Corporation; and
John Sinde, President of the Village of
Westchester, Illinois, a Corporation, De-
fendants.

No. 95 C 1422.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 6, 1996.

Gene L. Armstrong, Robert D. Butters, Cichocki & Armstrong, Ltd., Oak Park, IL, Jon Allan Duncan, Thadford A. Felton, Cichocki & Armstrong, Ltd., Chicago, IL, for Plaintiffs.

Christopher D. Edmonds, Bruce M. Rose, Dvorak, Edmonds & Sbertoli, Ltd., Westchester, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER

ANDERSEN, District Judge.

On December 29, 1995, Magistrate Judge Martin Ashman filed and served upon the parties his Report and Recommendation concerning plaintiffs' motion for summary judgment on Counts I and II of the amended complaint, defendants' motion to dismiss Count II, and defendants' motion for summary judgment on Count I. The Magistrate Judge recommended that: 1) defendants' motion to dismiss Count II be denied; 2) plaintiffs' motion for summary judgment as to liability on Count II be granted; 3) defendants' motion for summary judgment on Count I be granted in part and denied in part; 4) plaintiffs' motion for summary judgment on Count I be denied; and 5) defendant John Sinde's motion for summary judgment be granted as to all claims against him. For the following reasons, the Magistrate Judge's Report and Recommendation is adopted in full.

The above motion was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A). After the Magistrate Judge's Report and Recommendation was entered, neither party filed any objections to the Report and Recommendation within the ten-day limit set forth in 28 U.S.C. § 636(b)(1)(C). On January 11, 1996, this court granted defendants' request for an extension of time to file objections, granting an extension until January 22, 1996. However, defendants never filed any objections to the Report and

Recommendation. Any objections either party may have to the Report and Recommendation were therefore waived. *Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538, 539 (7th Cir.1986).

Nonetheless, the court has reviewed the Report and Recommendation and finds that it is well supported by the record and the applicable law. With regard to defendants' motion to dismiss Count II, we agree with the Magistrate Judge's conclusion that plaintiffs' allegations state a cause of action. Plaintiffs adequately allege that defendants have violated § 3604(f)(3)(B) of the Fair Housing Act by failing to make a reasonable accommodation from certain village building and safety ordinances.

We also agree with the Magistrate Judge's conclusion that plaintiffs' motion for summary judgment as to liability on Count II should be granted. We find that a waiver of the sprinkler requirement is a reasonable and necessary accommodation to ensure that plaintiffs have an equal opportunity for housing.

The Magistrate Judge also recommending granting in part and denying in part defendants' motion for summary judgment as to Count I and denying plaintiff's summary judgment motion as to this count. Count I alleges discrimination pursuant to §§ 3604(f)(1)(B), 3604(f)(2)(B), 3604(c) and 3617 of the Fair Housing Act. Regarding § 3604(c), plaintiffs simply have not shown any printed or published notice, statement or advertisement relating to the "sale or rental of a dwelling" attributable to the defendants which indicates any preference, limitation, or discrimination on the basis of handicap, as this section requires. In addition, plaintiffs provide no evidence of any defendants coercion, intimidation, threats or interference with plaintiffs' right to exercise their rights as is required by § 3617. Therefore, the Magistrate Judge properly granted defendants' summary judgment motion as to the §§ 3604(c) and 3617 discrimination allegations in Count I. The Magistrate Judge properly denied plaintiffs' and defendants' motions regarding the allegations of discrimination based on §§ 3604(f)(1)(B) and 3604(f)(2)(B) in Count I because questions of fact exist.

Next, the Magistrate Judge properly recommending granting summary judgment in favor of defendant John Sinde on both Counts I and II. The statements attributed to Sinde do not evidence discrimination. There is simply no evidence that Sinde made the Westchester Dwelling unavailable to plaintiffs, interfered with or threatened plaintiffs, or discriminated on the basis of handicap. Moreover, there is no evidence that Sinde controlled the Board or alone made decisions on behalf of Westchester.

Accordingly, we adopt the Report and Recommendation in full. Therefore, summary judgment is entered in favor of defendants on the §§ 3604(c) and 3617 claims of Count I; summary judgment is entered in favor of plaintiffs as to liability on Count II; summary judgment is granted in favor of defendant John Sinde as to all claims against him.

### *REPORT AND RECOMMENDATION*

ASHMAN, United States Magistrate Judge.

Several motions are presently before this Court: Plaintiffs' motion for summary judgment on Counts I and II, Defendants' motion to dismiss Count II and Defendants' motion for summary judgment on Count I. On June 2, 1995, Plaintiffs filed an Amended Complaint seeking declaratory and injunctive relief, along with compensatory and punitive damages, pursuant to the Fair Housing Act, as amended by the Fair Housing Act Amendments of 1988, 42 U.S.C. § 3601, *et seq.* Specifically, Plaintiffs allege that Defendants have wrongfully interfered in the use of a two-flat building, currently the residence for six developmentally disabled adults, by discriminating against Plaintiffs on the basis of handicap (Count I), or by failing to make a reasonable accommodation (Count II).

### I. *Undisputed Facts*

The following relevant and undisputed facts are taken from the parties' 12M and 12N statements filed in conjunction with these motions.

Plaintiff, Proviso Association of Retarded Citizens ("PARC"), is a not-for-profit corpo-

ration, organized under the laws of the State of Illinois and headquartered in Westchester, Illinois. PARC is currently licensed by the Illinois Department of Mental Health and Developmental Disabilities ("DMHDD") to provide Community Integrated Living Arrangements ("CILAs") for persons with developmental disabilities. Plaintiffs, Charles Petty ("Petty") and Donna Lee Fitzner ("Fitzner"), are developmentally disabled adults who receive residential support and habilitative and vocational training from PARC.

Defendant, Village of Westchester, Illinois ("Westchester"), is a political subdivision and operates as a municipal corporation under the laws of the State of Illinois. Defendant, John Sinde ("Sinde") is Village President and is one of seven members of the Board of Trustees which governs Westchester.

On February 6, 1995, PARC purchased a two-flat building located at 1231 Mannheim Road in Westchester ("Westchester Dwelling"). PARC is using and intends to continue to use each of the apartments in the Westchester Dwelling as a CILA for three of PARC's clients. Each unit has three bedrooms, and one unit is used as a CILA for three adult men while the other is used as a CILA for three adult women. The two CILAs operate independently of each other, and the residents of one unit do not share cooking, cleaning or laundry chores nor do they share bathroom, kitchen, living or sleeping accommodations with the residents of the other unit.

Plaintiffs, Petty and Fitzner, currently reside in the Westchester Dwelling with four other developmentally disabled adults who are all between the ages of 34 and 39. Each resident is ambulatory and physically able-bodied with normal eyesight and hearing. Each resident either works at a job or attends PARC training programs at locations outside the Westchester Dwelling during the daytime hours on Mondays through Fridays.

Pursuant to Ordinance No. 82–1021, Westchester adopted the Building Officials and Code Administrators Basic Building Code 1981 Edition with amendments ("BOCA Code") and the National Fire Prevention Association Life Safety Code 101/1981 Edition ("Life Safety Code") for use in determining the use classification of buildings in Westchester. The Westchester Dwelling is currently classified as R–3 "Residential Use."

In a letter dated January 24, 1995, John Crois, Village Manager of Westchester, advised James A. Lehmann, PARC Vice President for Program Services, that the Westchester Dwelling had been inspected and found to comply with all village codes and ordinances applicable to any R–3 use structure. However, Crois further advised Lehmann that PARC's intended use of the Westchester Dwelling could cause the reclassification to I–2 "Institutional Use" under the BOCA Code.

Subsequent to the filing of this suit, Westchester reevaluated the use classification and determined that the Westchester Dwelling could also be appropriately classified as R–2 "Residential Use." At oral argument, Defendants asserted that, due to the stay imposed by this litigation, the Westchester Dwelling has not yet been reclassified from R–3, but that the Westchester Dwelling will be reclassified as either I–2 or R–2 once the stay is lifted.[1]

---

1. Under the 1981 BOCA Code, the relevant Residential Use groups are defined as follows:

> 308.3 Use Group R–2 Structures: This group shall include all multiple family dwellings having more than two dwelling units; and shall also include all dormitories, boarding and lodging houses arranged for shelter and sleeping accommodations of more than five and not more than 20 individuals.
> 308.4 Use Group R–3 Structures: This group shall include all buildings arranged for the use of one or two family dwelling units, including not more than five lodgers or boarders per family.

The relevant Institutional Uses are defined as follows:

> 306.1 General: All buildings and structures, or parts thereof, shall be classified in Use Group I in which people suffering from physical limitations because of health or age are harbored for medical or other care or treatment, or in which people are detained for penal or correction purposes, or in which the liberty of the inmates is restricted.
> 306.3 Use Group I–2: This use group shall include all buildings used for housing people suffering from physical limitations because of health or age, including, among others, day nurseries, hospitals, sanitariums, infir-

The installation of sprinklers is required by Paragraph 1–6.4 of Westchester's Life Safety Code any time there is a change in occupancy classification, unless the change is to R–3 or R–4. As a result, Westchester, through various Village officials including Sinde, has informed Plaintiffs that if the Westchester Dwelling is reclassified to I–2 or R–2, PARC must install a sprinkler system (a less costly residential sprinkler will be acceptable) and obtain a Special Use Permit.

On February 28, 1995, PARC appeared before the Village Board at a regularly scheduled meeting and asked the Trustees to reject the suggested I–2 reclassification and to maintain the R–3 classification of the Westchester Dwelling. In the alternative, PARC sought a reasonable accommodation pursuant to 42 U.S.C. § 3604(f)(3)(B) to allow PARC to use the two units in the Westchester Dwelling as CILAs without the need to install a sprinkler system or apply for a Special Use Permit. Westchester declined PARC's suggestions and offered to allow immediate occupancy of the Westchester Dwelling, but only under the following conditions: 1) that PARC and its clients forfeit any right to insist that the property retain its R–3 classification; 2) that PARC agree to install a residential sprinkler system within 12 months; and 3) promptly apply for a Special Use Permit.

On June 13, 1995, PARC presented a written request for a "reasonable accommodation" from Westchester's ordinances and codes requiring installation of a sprinkler system, and Special Use Permit be issued on the condition that PARC use the two units as CILAs with no more than three persons residing in each. On June 30 and August 24, 1995, Westchester's Village attorney conveyed the message that the accommodation had been denied.

Each of the six residents of the Westchester Dwelling have a "handicap" as defined by 42 U.S.C. § 3602(h) [2] in that each is developmentally disabled to some degree. Since occupying the Westchester Dwelling, PARC has conducted over 20 unannounced fire drills at the premises. In each instance the six residents have evacuated the Dwelling in three minutes or less without assistance from PARC staff. At night and at all times when residents are in the Westchester Dwelling at least one adult supervisor from PARC is present.

## II. Discussion

### A. Defendants' Motion To Dismiss Count II

When considering a motion to dismiss, the Court must consider the allegations in the complaint to be true and view them, along with reasonable inferences to be drawn from them, in the light most favorable to the plaintiff. A complaint should be dismissed for failure to state a claim only if it appears beyond doubt that the plaintiff is unable to prove any set of facts that would entitle him to relief. While the plaintiff need not set out in detail all the facts upon which the claim is based, he must allege sufficient facts to outline a cause of action. *Doe v. St. Joseph's Hosp. of Ft. Wayne,* 788 F.2d 411, 414 (7th Cir.1986).

In Count II, Plaintiffs allege that Defendants have violated Section 3604(f)(3)(B) of the FHA by failing to make a reasonable

maries, orphanages, and homes for the aged and infirm.

The 1981 BOCA Code defines the following relevant terms as follows:

Dwelling Unit: A single unit providing complete, independent living facilities for one or more persons, including permanent provisions for living, sleeping, eating, cooking and sanitation.

Dwellings:

Boarding House: A building arranged or used for lodging, with or without meals, for compensation and not occupied as a single family unit.

Dormitory: A space in a building where group sleeping accommodations are provided for persons not members of the same family group, in one room, or in a series of closely associated rooms.

One-family Dwelling: A building containing one dwelling unit with not more than five lodgers or boarders.

Two-family Dwelling: A building containing two dwelling units with not more than five lodgers or boarders per family.

2. The Fair Housing Act defines handicap as "a physical or mental impairment which substantially limits one or more of such persons major life activities." 42 U.S.C. § 3602(h)(1).

accommodation from certain Village building and safety ordinances. Defendants contend that this allegation fails to state a claim under Rule 12(b)(6). The Court finds that under the liberal "notice pleading" required in federal civil practice, Defendants' motion to dismiss should be denied.

■ FED.R.CIV.P. 12(b)(6) provides in pertinent part:

(b) **How Presented.** Every defense, in law or fact, to a claim for relief in any pleading, ... shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted, ...

Section 3604 of the FHA provides in pertinent part:

(3) For purposes of this subsection, discrimination includes—

\* \* \* \* \* \*

(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling;

\* \* \* \* \* \*

42 U.S.C. § 3604(f)(3)(B).

In Count II, Plaintiffs have alleged all of the elements required for a claim under Section 3604. First, Plaintiffs allege that they are handicapped and entitled to the projections of the FHA. (Amended Complaint, ¶¶ 5–7). Second, they allege that they seek to live in a two-flat building in Westchester, and that Westchester has placed conditions, *i.e.,* building and safety requirements, upon their continued occupancy of the Westchester Dwelling. (Amended Complaint, ¶¶ 6, 7, 11–16). Third, Plaintiffs allege that they have sought and been denied an accommodation from those building and safety requirements. (Amended Complaint, ¶¶ 22, 23). Defendants argue that Plaintiffs have failed to allege that the proposed accommodation is necessary for them to have an equal opportunity for housing. However, the issues of reasonableness and necessity are fact sensitive; Plaintiffs

have alleged that they have been denied a "reasonable accommodation" from Westchester regulations and thus their claim states a claim under Rule 12(b)(6). This issue is more properly considered in the discussion related to the motions for summary judgment which follow.

For these reasons, the Court recommends denial of Defendants' motion to dismiss Count II.

**B.  *Cross Motions For Summary Judgment***

Summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden of establishing a lack of any genuine issue of material fact rests on movant. *Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir.1992). A genuine issue of fact exists when there is sufficient evidence favoring the non-moving party that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, the Court must view the evidence, and draw all reasonable inferences from the evidence, in the light most favorable to the non-moving party. *Kennedy v. U.S.,* 965 F.2d 413, 417 (7th Cir.1992); *Anderson,* 477 U.S. at 247, 106 S.Ct. at 2510. When presented with cross motions for summary judgment the Court must rule on each party's motion individually, determining in each case whether judgment may be entered in accordance with FED. R.CIV.P. 56. *Central States Southeast and Southwest Areas Pension Fund v. Miller,* 868 F.Supp. 995 (N.D.Ill.1994).

The same facts and issues are discussed in both motions for summary judgment and this Court will address Plaintiffs' Motion for Summary Judgment as to liability before addressing Defendants' Motion for Summary Judgment.

### 1. *Plaintiffs' Motion For Summary Judgment*

Espousing the general principle that it is United States policy "to provide, within constitutional limitations, for fair housing throughout the United States," the Fair Housing Act ("FHA") expressly defines and prohibits "discriminatory housing practices" against those who suffer handicaps. 42 U.S.C. §§ 3601, 3602 and 3604.

In their Complaint, Plaintiffs allege that Defendants have violated the FHA and present two alternate theories of liability. First, Plaintiffs argue that the reclassification from R–3 to I–2 or R–2, and certain related actions of Defendants, are improper and discriminatory under 42 U.S.C. § 3604(f)(1)(B), § 3604(f)(2)(B), § 3604(c) and § 3617.[3] In the alternative, Plaintiffs assert that, regardless of the classification, Defendants have refused to make a reasonable accommodation as required under 42 U.S.C. § 3604(f)(3)(B). Plaintiffs seek summary judgment as to both theories of liability and the Court will consider each in turn.

#### a. Classification

The Westchester Dwelling is currently classified R–3, and, due to the stay imposed by this litigation, the Westchester Board of Trustees has yet to formally reclassify the building. However, in open court, counsel for Defendants indicated that Westchester considers PARC's present and intended use of the Westchester Dwelling to necessitate reclassification to either I–2 or R–2. Westchester further asserts that, by ordinance, such a reclassification triggers several fire safety requirements including the installation of a sprinkler system ("the sprinkler require-

ment"). While Westchester has offered to waive certain of the fire safety requirements, it remains steadfast in insisting upon the installation of at least a residential sprinkler system for the Westchester Dwelling. Plaintiffs argue that any change in classification from R–3 is not proper under the BOCA and Fire Safety Codes, and that the proposed I–2 or R–2 classification discriminates against the developmentally disabled residents in violation of 42 U.S.C. § 3604(f)(1)(B) and (f)(2)(B).

As a preliminary matter, the Court notes that the FHA clearly does not vest any court with discretion to determine a building's use classification. In other words, the FHA does not permit this Court to act as a "Super–Board of Trustees" to preempt a municipality's zoning or use classification authority. In addition, the Westchester Dwelling remains classified as an R–3 building and it would be premature for this Court to analyze the effect of hypothetical classifications at this time. The Court finds that the circumstances of this case make summary judgment on the theory of discriminatory use classification improper at this time.[4] The Court therefore recommends denying Plaintiffs' motion for summary judgment as to Count I.

#### b. Accommodation

■ Briefing and argument have effectively narrowed the dispute in this case down to one pivotal issue: Whether or not Plaintiffs' request for a waiver of the sprinkler requirement, regardless of the Westchester Dwelling's use classification, constitutes a reasonable accommodation. For purposes of this analysis, the Court will assume that the Westchester Dwelling should properly be re-

---

**3.** The FHA directs in pertinent part:

   . . . it shall be unlawful—

      \*     \*     \*     \*     \*     \*

   **(f)(1)** To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—

      \*     \*     \*     \*     \*     \*

   **(B)** a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available;

      \*     \*     \*     \*     \*     \*

   **(2)** To discriminate against any person in the terms, conditions, or privileges of sale or

rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—

      \*     \*     \*     \*     \*     \*

   **(B)** a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available;

      \*     \*     \*     \*     \*     \*

42 U.S.C. § 3604(f)(1)(B) and § 3604(f)(2)(B).

**4.** Plaintiffs' remaining theories of discrimination based on Sections 3604(c) and 3617 will be discussed subsequently in relation to Defendants' motion for summary judgment.

classified from R–3.[5] Reasonable accommodation has been defined as "changing some rule that is generally applicable so as to make its burden less onerous on the handicapped individual." *North Shore–Chicago Rehabilitation, Inc. v. Village of Skokie,* 827 F.Supp. 497, 499 (N.D.Ill.1993), quoting *Oxford House, Inc. v. Township of Cherry Hill,* 799 F.Supp. 450, 462 n. 5 (D.N.J.1992).

Plaintiffs assert that the circumstances of this case support a finding that a waiver of the sprinkler requirement is a reasonable accommodation. Westchester counters that the sprinkler requirement is imposed by Village ordinance and affects both the disabled and non-disabled equally such that to waive it for the Plaintiffs would give them a superior opportunity for housing rather than the equal opportunity contemplated by the FHA.[6] For the following reasons, the Court finds that waiver of the sprinkler requirement would be a reasonable accommodation under the circumstances of this case.

■ The FHA's broad mandate: to eliminate discrimination against, and to equalize housing opportunities for, disabled individuals, is tempered only by the implied understanding that while reasonable accommodations are sometimes necessary, not all accommodations are reasonable or even necessary under the circumstances. *Bronk v. Ineichen,* 54 F.3d 425, 428–29 (7th Cir. 1995). In other words, accommodations under the FHA must be reasonable and necessary. The Seventh Circuit has held that reasonableness does "not entail an obligation to do everything humanly possible to accommodate a disabled person." *Bronk,* 54 F.3d at 429. Rather, the rea-

sonableness of an accommodation is assessed based on weighing the cost/burden to the defendant against the benefit to the plaintiff. Further, necessity requires "at a minimum the showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability." *Bronk,* 54 F.3d at 429.

### 1) Reasonableness

■ Federal courts have consistently found under the FHA an accommodation reasonable when it imposes no undue financial or administrative hardships on the defendant making the accommodation and when it does not undermine the basic purpose of the requirement. *Oxford House, Inc.,* 799 F.Supp. at 461; *U.S. v. Village of Marshall, Wis.,* 787 F.Supp. 872, 878 (W.D.Wis.1991). Westchester presents no evidence that it will suffer any hardship if it waives the sprinkler requirement. In fact, the undisputed evidence supports the Plaintiffs because their desired accommodation amounts to a request for non-enforcement of a Village rule for which Westchester has not articulated any hardship (administrative or financial) resulting from such non-enforcement. Rather, Westchester argues that the requirement applies equally to all citizens in similar situations and is necessary to protect the safety of the citizens. Thus, the reasonableness issue turns on whether or not the proposed accommodation, *i.e.,* waiver of the sprinkler requirement, will undermine the purpose of the Village Life Safety Code.

On this issue, Westchester also presents no evidence that such an accommodation will

---

**5.** The Court recognizes that Plaintiffs have not conceded that the Westchester Dwelling's use classification must change, and assumes this only in order to address the merits of the accommodation issue.

**6.** Westchester further argues that any argument for accommodation from the Special Use Permit requirement is not ripe for appeal and relies on the holding in *U.S. v. Village of Palatine, Ill.,* 37 F.3d 1230 (7th Cir.1994). In *Palatine,* plaintiffs sought waiver of a Special Use Permit requirement for a group home for recovering alcoholics, the Seventh Circuit held that since plaintiffs had not requested such a Permit, the municipality had not had the opportunity to award the Permit

or make an accommodation; therefore, the issue of reasonable accommodation was not ripe. The Court finds the *Palatine* holding inapplicable in this case. First, the crucial dispute here revolves around the sprinkler requirement; Westchester has indicated that a Special Use Permit will be issued if Plaintiffs agree to install a sprinkler system. Second, Plaintiffs have made formal requests to the Village Board of Trustees for waiver of the sprinkler requirement which requests were rejected. Thus, the circumstances of this case differ significantly from those in *Palatine* and the Court finds that the issue of reasonable accommodation is therefore ripe.

increase risk to its citizens; and, once again, the facts of this case do not support such a finding. There is no evidence or argument that the Village of Westchester or its residents or even the Westchester Dwelling or its residents will be any more at risk from fires than they were before Plaintiffs occupied the dwelling.

It is undisputed that the Westchester Dwelling has, and still maintains, an R–3 use classification which necessitates no fire safety requirements other than smoke detectors. The absence of such requirements for R–3 structures exists regardless of whether the occupants are aged, infirm or disabled. It is further undisputed that since acquiring the Westchester Dwelling, PARC has installed fire alarm and smoke alarm systems linked directly to the Fire Station and that each of the adult residents has practiced and is capable of evacuating the premises in under three minutes. These undisputed facts demonstrate that waiving the sprinkler requirement in this case will not undermine the purpose of Westchester's Life Safety Code.

Balanced against this burden is the benefit to the Plaintiffs. Both parties agree that the cost of installing even a residential sprinkler system is between $20,000 and $30,000. The savings in time and money afforded by the proposed accommodation clearly outweighs Westchester's above-described minimal burden. For these reasons, the Court finds that plaintiffs' proposed accommodation regarding waiver of the sprinkler requirement is reasonable under the circumstances of this case.

## 2) Necessity

In addition to being reasonable, an accommodation must also be necessary "to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B); See also Bronk, 54 F.3d at 429. Westchester argues that, since Plaintiffs have not made a showing that they will be unable to occupy the Westchester Dwelling if forced to install a sprinkler, they have not shown that waiving such a requirement is necessary. In effect, Westchester presents an "equal treatment"-type argument, i.e., because Plaintiffs are subject to requirements imposed on all groups of unrelated non-disabled people, they

have an "equal opportunity" to live in the Westchester Dwelling.

However, in the Bronk holding the Court expressly noted that the concept of 'reasonable accommodation' in a disabled housing discrimination case and the concept of 'equal treatment' in a race-based housing discrimination case are distinct and not interchangeable. In this case, Westchester's "equal treatment" argument is misplaced and unpersuasive as it fails to fully address all of the circumstances. First, the very fact that Plaintiff residents are developmentally disabled and entitled to reasonable accommodations under the FHA in itself assures certain special, 'unequal,' treatment.

Second, Westchester's argument improperly shifts the burden on Plaintiffs to show that they are unduly burdened by the sprinkler requirement. Weighing of burdens occurs at the reasonableness phase; at this stage, the issue is not a weighing of burdens but one of necessity. Under the FHA, the necessity issue concerns equality of opportunity, not equality of treatment. As the FHA guarantees equal opportunity, the issue then becomes whether or not the proposed accommodation provides that equality of opportunity.

Reasonableness and necessity must not be analyzed in a vacuum as Westchester effectively seeks; rather, all the circumstances of this case must be considered together. One consideration is that group homes, like the CILAs here, provide unique, important and often the only opportunity for disabled adults, such as Plaintiff residents to live within the community as a whole. It is undisputed that these homes enhance the lives of the Plaintiff residents, and arguably the community as a whole. Without the installation of a sprinkler system, Westchester refuses to allow Plaintiffs' continued use and occupation of the Westchester Dwelling.

Westchester contends that the sprinkler requirement is imposed based on the residents' status as a non-family—not because of their status as disabled. Westchester suggests that if the Westchester Dwelling were occupied by three unrelated adults in each unit, they, too, would not qualify as a family and would fall into a use category that re-

quires sprinklers. This Court does not agree.

Westchester has adopted the definition that family is a group of people related by blood, marriage or adoption. (*See* Plaintiffs' 12M, ¶ 28). However, the BOCA Code also considers one adult to constitute a family,[7] and Westchester admits that village code allows for three lodgers or boarders to reside with a family in a single family residence. Given that one adult constitutes a family and three lodgers are permitted per family, it is clear that up to eight[8] unrelated, non-disabled adults occupying the Westchester Dwelling would not trigger these safety requirements. The Westchester code makes no provision for group homes like the CILAs at issue, and provides no evidence that it has ever imposed these safety requirements on similarly situated, non-disabled adults.

The Court finds that under these circumstances, the imposition of safety requirements for non-single family residences on the Westchester Dwelling is unreasonable and unnecessary. As discussed above, waiving the sprinkler requirement has not been argued or shown to increase the risk to the safety of either the Plaintiff residents or the community as a whole. In addition, the Court finds significant the fact that the Illinois State Fire Marshall memorandum highlighting the policy change in the 1994 Life Safety Code provides that small board and care homes with eight or fewer residents do not need to have a sprinkler system as long as they have a prompt evacuation capability.

(First Amended Complaint, Exh. 3). The undisputed facts of this case reveal that the Westchester Dwelling has more safety features than the average single family dwelling and the residents have better evacuation training than most similarly situated citizens. Under these circumstances, the Court finds that waiver of the sprinkler requirement is a necessary accommodation to ensure that Plaintiffs will have an equal opportunity for housing.

For these reasons, the Court finds that there are no genuine issues of material fact and that Plaintiffs are entitled to summary judgment on the issue of liability. Therefore, the Court recommends granting Plaintiffs' motion for summary judgment to the extent that such judgment is modified by the following analysis regarding Defendants' motion for summary judgment.

### 2. Defendants' Motion For Summary Judgment

Defendants seek summary judgment as to Count I—Discrimination and also seek summary judgment on both counts as to Sinde. The Court finds Defendants' motion relevant in two respects.

■ First, in Count I—Discrimination, Plaintiffs seek damages based on Defendants' alleged violations of various sections of the FHA. The Court finds that the undisputed facts do not support such claims based on Sections 3604(c) and 3617.[9] Specifically, Section 3604(c) is completely inapplicable to this case. Plaintiffs have not shown any printed or published notice, statement or ad-

---

**7.** Not only does a fair reading of the BOCA Code allow such a conclusion, but Westchester readily admitted such a conclusion at oral argument. In fact, any other reading would, ridiculously, prohibit a single person from occupying a single family residence.

**8.** Considering the Westchester Dwelling as two single family dwellings, one adult could occupy each along with three unrelated lodgers, thus a maximum of eight unrelated individuals could occupy the Westchester Dwelling under the R–3 classification.

**9.** Section 3604(c) of the FHA provides:
 ... it shall be unlawful—
 \* \* \* \* \* \*
 (c) to make, print, or publish, or cause to be made, printed or published any notice, statement, or advertisement, with respect to the

sale or rental of a dwelling that indicates any preference, limitation or discrimination based on ... handicap ..., or an intention to make any such preference, limitation, or discrimination.

\* \* \* \* \* \*

Further, Section 3617 of the FHA directs:
 It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section ... 3604 ... of this title.

vertisement relating to the "sale or rental of a dwelling" attributable to the Defendants which indicates any preference, limitation, or discrimination on the basis of handicap as required under Section 3604(c). In fact, the only "published" statement concerned Sinde's comments about the need for a sprinkler system.[10] The publication was a newspaper's, not the Village's nor Sinde's. At most these statements evidence misunderstanding and, perhaps, ignorance—not discriminatory intent; further, this was not made in relation to the sale or rental of property. It was made by a Village official concerning a Village decision about the interpretation of Village ordinances.

In addition, there are no facts to support Plaintiffs' claim based on Section 3617. Plaintiffs provide no evidence of any coercion, intimidation, threats or interference with Plaintiffs' right to exercise their rights. Again, the statements attributed to Sinde do not evidence threats, intimidation or coercion. There is no evidence that Sinde alone was the decisionmaker or alone influenced the Village Board or that his statements even reflected the opinions of fellow Village Board members. Under these circumstances, these statements do not rise to the level of discrimination required for proof of a violation of Section 3617.

Inasmuch as these claims are unsupported by the undisputed facts, Defendants should be granted summary judgment only as to those allegations in Count I which pertain to discrimination pursuant to Sections 3604(c) and 3617. Defendants' motion for summary judgment should be denied as to the allegations of discrimination based on Section 3604(f)(1)(B) and 3604(f)(2)(B).

Second, the individual Defendant, Sinde, also asserts that the undisputed facts support summary judgment in favor of him as to both Count I and Count II. The Court agrees for the following reasons. First, as discussed above the statements attributed to Sinde do not evidence discrimination—merely misunderstanding and, perhaps, ignorance of developmental disability; which is not actionable since he was acting as one member of the Village Board. There is no allegation nor evidence that Sinde, the individual, made the Westchester Dwelling unavailable to Plaintiffs; discriminated on the basis of handicap; limited or discriminated against Plaintiffs; or interfered with, intimidated, coerced or threatened Plaintiffs. Neither are there allegations that Sinde somehow controlled the Board nor alone made decisions on behalf of Westchester. Every allegation made against Sinde concerned statements he made in his capacity as Westchester Village Board President. There is no evidence that Sinde alone had authority to deny the accommodation or that he influenced the Village Board to deny it.

For these reasons, the Court finds that the undisputed facts provide no basis upon which this Court or any fact-finder could support a finding of individual liability against Sinde. Therefore, the Court recommends that Sinde be granted judgment on both Count I and II as a matter of law.

### III. *Conclusion*

For the above-mentioned reasons, this Court finds that Count II of the Amended Complaint states a claim, that the undisputed facts show that Plaintiffs are entitled to summary judgment on the issue of reasonable accommodation and that Defendant, John Sinde, is entitled to summary judgment. The Court hereby recommends that Defendants' motion to dismiss Count II be DENIED; that Plaintiffs' motion for summary judgment on the issue of reasonable accom-

---

**10.** Plaintiffs attach as Exhibit 6 to their Complaint a copy of a newspaper article from the *Westchester News* dated March 9, 1995 which quotes Sinde as saying:

> In my opinion, this village thinks more of the health and safety of those children than the people who get all that money for them do. I am really upset about this."

The article further reported:

> Sinde also said that even though the people who live in the home are adults, they some-

times "have the mental ability of children." He said he is concerned over how they would react in an emergency.
(First Amended Complaint, Exh. 6).

Similar statements were also attributed to Sinde in a transcript of a June 27, 1995 Committee meeting at which PARC sought a reasonable accommodation from the sprinkler requirement. (James Lehman Affidavit, Exh. 4).

modation be GRANTED; that Defendants' motion for summary judgment be DENIED IN PART and GRANTED IN PART; and that Defendant, John Sinde, be GRANTED summary judgment on all claims.

Dated: December 29, 1995.