Susan L. HUBBARD, Plaintiff,

v.

SAMSON MANAGEMENT CORPORA-TION, and Manny Zevallos, as Property Manager, Samson Management Corp., Defendants.

UNITED STATES of America, Plaintiff,

v.

SAMSON MANAGEMENT CO. and Manny Zevallos, Defendants.

Nos. 96 Civ. 1400 (BDP), 96 Civ. 9005 (BDP).

United States District Court, S.D. New York.

Feb. 5, 1998.

Michael D. Hampden, Westchester/Putnam Legal Services, White Plains, NY, for Plaintiff.

Marianne T. O'Toole, Asst. U.S. Atty., New York City, for Consolidated Plaintiff.

Kenneth J. Finger, Finger & Finger, White Plains, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

### INTRODUCTION

In June 1995, Susan Hubbard, who is disabled, rented an apartment in the Sleepy Hollow Gardens apartment complex ("Sleepy

Hollow"), owned by defendant Samson Management Corporation and managed by defendant Manny Zevallos. After Samson refused Hubbard a free parking space near her home, she commenced this action for injunctive relief and damages, alleging, among other things, that defendants failed reasonably to accommodate her disability, in violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* The United States filed a separate action on Hubbard's behalf, making the same claim. The two actions have been consolidated.

The central issue on this motion is whether a free, reserved parking space near her apartment is a reasonable accommodation required by the Fair Housing Act. The United States and Hubbard contend that the space must be provided without charge, whereas the defendants maintain that a monthly fee is a reasonable accommodation. The parties concede that plaintiff's handicap necessitates that she park close to her apartment.

The United States and Hubbard have moved, and the defendants have cross-moved, for summary judgment on the issue of liability.[1] For the reasons that follow, the motions of the United States and Hubbard are granted in part and denied in part. The defendants' motion is denied.

## BACKGROUND

The parties have stipulated, for purposes of this motion only, that plaintiff Susan Hubbard is handicapped as defined in the Fair Housing Act.[2] Prior to renting her apartment in June 1995, Hubbard injured her left foot at work and, as a result, suffers from a chronic fracture of her foot and persistent back pain. She has undergone a variety of treatments, including surgery, none of which has been wholly successful in alleviating her condition. Hubbard walks with the aid of a cane and has difficulty walking long distances.

Sleepy Hollow is a fifteen building complex that contains 215 apartments. The complex has 150 outdoor, unreserved parking spaces used on a first come, first served basis, free of charge. Additionally, there are 20 reserved, outdoor spaces available for a monthly fee of $34.15. The complex also offers 81 reserved, indoor parking spaces for a monthly fee of $66.26. The parties do not dispute that none of the reserved spaces are sufficiently close to plaintiff's apartment, although at least 4 of the unreserved spaces are. There are no parking spaces at Sleepy Hollow designated for handicapped tenants. Because the unreserved parking spaces near her apartment were typically full, Hubbard frequently had to walk a quarter of a mile or more to and from her car. Walking that distance was painful and apparently risked further injury to her foot.

Within a month after moving into Sleepy Hollow, Hubbard requested, through a series of letters, a reserved parking space near her apartment. On July 18, 1995, Hubbard, through her attorney, wrote to Samson requesting a parking space located near her apartment, explaining that she needed the space on account of her physical condition. On August 11, 1995, the defendants informed Hubbard that she could avail herself either of the unreserved free parking or pay for one of the reserved parking spaces. On August 31, 1995, Hubbard's attorney responded, reiterating Hubbard's request for a parking space near her apartment and stating explicitly that she needed such a space due to her disability. Enclosed with the letter was a copy of the regulation, 24 C.F.R. § 100.204(b), relating to a landlord's responsibility to make reasonable accommodations for a handicapped tenant. On October 6, 1995, Hubbard's attorney, having received no response to the August 31 letter, renewed the request.

In November 1995, Hubbard filed a housing discrimination complaint with the United States Department of Housing and Urban

---

1. The defendants have cross-moved to dismiss the complaint, for judgment on the pleadings, or for summary judgment. Because the Court has reviewed material in addition to the pleadings, this motion will be treated as one for summary judgment pursuant to Rule 56, Fed.R.Civ.P.

2. The Fair Housing Act defines handicap as "a physical or mental impairment which substantially limits one or more of such persons major life activities." 42 U.S.C. § 3602(h)(1).

Development, alleging that the defendants failed reasonably to accommodate her handicap by not reserving a parking space near her apartment solely for her use.

On December 2, 1995, defendants offered to designate the parking space closest to Hubbard's apartment for her sole use, provided that she pay the customary monthly fee for reserved spaces of $34.15, along with a security deposit. On December 21, 1995, Hubbard rejected defendants' offer. Subsequently, defendants offered to establish three parking spaces designated "handicapped" at different locations throughout the complex. None of these parking spaces was as close to Hubbard's apartment as the space that she desired and which defendants offered to reserve for her on a fee paid basis.

After a hearing, this Court denied Hubbard's request for a preliminary injunction. Thereafter, defendants designated a space for Hubbard's sole use and Hubbard paid the monthly fee of $34.15 applicable to outdoor, reserved spaces. Hubbard agreed to pay for the parking space without prejudice to her claim that defendants were required by law to provide a space without charge. In August 1996, Hubbard moved from Sleepy Hollow.

On October 4, 1996, HUD, after investigating Hubbard's complaint, issued a Determination of Reasonable Cause and Charge of Discrimination, contending that the defendants engaged in discriminatory housing practices in violation of the Fair Housing Act. 42 U.S.C. § 3604. On October 26, 1996, Hubbard, having elected, pursuant to 42 U.S.C. § 3612(a), to proceed in this Court rather than administratively, filed this action. The United States subsequently filed a separate action on Hubbard's behalf.

## DISCUSSION

### SUMMARY JUDGMENT

A motion for summary judgment should only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c); *Hayes v. New York City Department of Corrections*, 84 F.3d 614, 619 (2d Cir.1996); *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). This Court's responsibility is to perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *McNeil v. Aguilos*, 831 F.Supp. 1079, 1082 (S.D.N.Y.1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *Hayes*, 84 F.3d 614 at 619.

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities in the light most favorable to, and draw all reasonable inferences in favor of, the party opposing the motion. *Wernick v. Federal Reserve Bank of New York*, 91 F.3d 379, 382 (2d Cir.1996); *In re State Police Litigation*, 88 F.3d 111, 123 (2d Cir. 1996).

### FAIR HOUSING ACT

The Fair Housing Amendments Act of 1988 (the "Act") makes unlawful discrimination on the basis of handicap, "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling." 42 U.S.C. § 3604(f)(2)(A); *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 333 (2d Cir.1995). Discrimination prohibited by the Act includes the refusal to make "reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford [the handicapped individual] an equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B); 24 C.F.R. § 100.204(a); *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 115 S.Ct. 1776, 1779, 131 L.Ed.2d 801 (1995). Reasonable accommodations can involve "changing some rule that is generally applicable so as to make its burden less onerous on the handicapped individual." *Proviso Assoc. of Retarded Citizens v. Village of Westchester, Illinois*, 914 F.Supp. 1555, 1562 (N.D.Ill.1996) (internal quotations and citations omitted).

■ Accommodations required under the Act must be both reasonable and necessary to afford the handicapped individual an equal opportunity to use and enjoy a dwelling. *Proviso Assoc. v. Westchester,* 914 F.Supp. at 1562; *Bryant Woods Inn, Inc. v. Howard County, Maryland,* 911 F.Supp. 918, 940 (D.Md.1996). Whether a requested accommodation is required under the Act is "highly fact-specific, requiring case-by-case determination." *United States v. California Mobile Home Park Mgmt. Co.,* 29 F.3d 1413, 1418 (9th Cir.1994) ("California Mobile Home Park I"); *Lyons v. Legal Aid Society,* 68 F.3d 1512, 1516 (2d Cir.1995).

To determine whether the Act requires a proposed accommodation, courts generally balance the burdens the contemplated accommodation imposes on the defendant against the benefits to the plaintiff. *See, e.g., Proviso Assoc. v. Westchester,* 914 F.Supp. at 1562 (weighing costs to defendant against the benefits to plaintiff); *Bryant Woods v. Howard County,* 911 F.Supp. at 941 (balancing "the plaintiff's interest in equal housing opportunity against the defendant's interest in the integrity of the scheme to be affected by the [proposed accommodation]").

As the balancing test suggests, courts typically find an accommodation reasonable "when it imposes no undue financial or administrative hardships on the defendant ... and when it does not undermine the basic purpose of the [challenged] requirement." *Proviso Assoc. v. Westchester,* 914 F.Supp. at 1562; *Oxford House, Inc. v. Town of Babylon,* 819 F.Supp. 1179, 1186 (E.D.N.Y.1993). It is clear under the Act that a landlord may be "required to incur reasonable costs to accommodate [a tenant's handicap] provided such accommodations do not pose an undue hardship or a substantial burden." *Shapiro v. Cadman Towers, Inc.,* 51 F.3d at 335; *Lyons v. Legal Aid Society,* 68 F.3d 1512, 1517 (2d Cir.1995). "The requirement of reasonable accommodation does not entail an obligation to do everything humanly possible to accommodate a disabled person; cost (to

the defendant) and benefit (to the plaintiff) merit consideration as well." *Bronk v. Ineichen,* 54 F.3d 425, 429 (7th Cir.1995).

■ At the same time, an accommodation should not "extend a preference to handicapped residents [relative to other residents], as opposed to affording them equal opportunity." *California Mobile Home Park I* at 1418.[3] In other words, accommodations that go beyond affording a handicapped tenant "an equal opportunity to use and enjoy a dwelling" are not required by the Act. *Bryant Woods Inn, Inc. v. Howard County, Maryland,* 124 F.3d 597, 605 (4th Cir.1997); *California Mobile Home Park I* at 1418.

These two issues—whether the designation of the space closest to Hubbard's apartment for her sole use, without charge, would either unduly burden the landlord, or unfairly advantage Hubbard relative to other tenants—frame the principal differences between the parties. While the parties agree, for purposes of this motion, that designating the space closest to Hubbard's apartment for her sole use would be a reasonable accommodation, they disagree on whether Hubbard should have been assessed a monthly fee for that space. Defendants contend that requiring them to provide Hubbard with a reserved parking space free of charge would unduly burden the landlord and grant Hubbard an unwarranted preference relative to other tenants. Plaintiffs assert that charging Hubbard for the space would deny her an equal opportunity to use and enjoy her dwelling.

The parties have arrived at these divergent conclusions in part because of their different points of departure. The plaintiffs contend, in essence, that Hubbard should have been assigned a space without charge because such space would have previously been available without charge, albeit on an unreserved basis. The defendants assert, in contrast, that Hubbard should have been required to pay for the parking space, because holders of all reserved spaces are charged a

---

3. The Second Circuit explicitly declined to address this issue in *Shapiro v. Cadman Towers, Inc.,* 51 F.3d at 336 (noting that the "extent to which a 'reasonable accommodation' ... can burden or take away rights or privileges enjoyed by non-handicapped persons is an important question of first impression in this Circuit. However, it would be premature for us to reach this issue now.").

monthly fee. To waive the fee for her, under this view, would constitute a waiver of a generally applicable fee. The plaintiffs envision the accommodation as the landlord's reserving for Hubbard a previously unreserved parking space. The defendants view the accommodation as creating for Hubbard a new reserved space significantly closer to her apartment than any of the other reserved spaces.

These contrasting approaches pose the following question: Should Hubbard's reserved space close to her apartment building be free because all the spaces close to the building are free, or should the space require payment of a monthly fee because all reserved spaces do? The answer rests upon an analysis of what would provide Hubbard an opportunity to use and enjoy her dwelling equal to that of other tenants, which is the purpose of a reasonable accommodation under the Act.

Other Sleepy Hollow tenants, who are not disabled and are therefore able to walk long distances more easily than Hubbard, need not pay a monthly fee in order to park within comfortable walking distance of their apartment.[4] Even without paying for a reserved space, other Sleepy Hollow tenants are able to walk between their car and their apartment without significant pain or inconvenience. Hubbard, on account of her disability, did not enjoy such access to her apartment. If the paucity of available unreserved parking near her apartment meant that Hubbard, due to her handicap, experienced greater discomfort and difficulty than other tenants in going to and from her car, then Samson should have accommodated her disability by providing her, without charge, a parking space close to her building.

This determination does not mean that Samson was required to designate a particular space for Hubbard's sole use. The Act only requires that Hubbard, as a practical matter, be able to park sufficiently near her apartment so as to equalize her opportunity to use and enjoy her dwelling. *Jankowski Lee & Assoc. v. Cisneros*, 91 F.3d 891, 896 (7th Cir.1996).

Having identified an accommodation that would have equalized Hubbard's opportunity to use and enjoy her dwelling, the question then becomes whether such an accommodation would unduly burden the landlord or inappropriately advantage Hubbard relative to other tenants. It is true that Samson has maintained a policy under which holders of reserved parking spaces pay a monthly fee. But granting Hubbard the use of a space near her apartment without charge would not diminish the number of reserved spaces available for rental or decrease Samson's income from these spaces.[5] Thus, Samson would not be burdened by designating a space for Hubbard's use without charge.

Samson's contention that Hubbard would be unfairly benefitted relative to the other tenants by reserving a space near her apartment for her sole use, without charge, is only correct if one ignores the significance of Hubbard's handicap, which is what necessitates the reasonable accommodation.[6] In light of Hubbard's handicap, reserving a space for her may be the only way to assure her the same access to her apartment that other tenants take for granted. Thus, it may

4. Although the record contains no information on the number of tenants who choose to pay for reserved parking spaces, the numbers of reserved and unreserved spaces, in light of the total number of units in the complex, suggest that most Sleepy Hollow residents do not pay for parking. Those who choose to pay for reserved parking likely do so voluntarily, as a matter of convenience or preference, rather than medical necessity.

5. The analysis would be different, of course, if Samson charged a fee for every parking space. But under the facts of this case, the only "cost" of allocating a specially designated space near Hubbard's apartment (in addition to the signage and related one-time expenses) is that because

such space would be taken from the pool of unreserved spaces, it would lessen the number of unreserved spaces available for non-handicapped tenants. This "cost," however, is so *de minimus* that it perhaps should not be considered a cost at all. In any event, this cost would be more or less the same whether the space was assigned to Hubbard or simply designated handicapped.

6. Admittedly, designating a specific space solely for Hubbard's use would have given her a minimal advantage over other tenants. While other tenants are able to park their cars, without having to pay a fee, within walking distance from their apartment, they are not able to be assured that the same space will always be available.

be necessary to reserve a space for Hubbard in order to equalize her access to her dwelling and thereby provide her the same opportunity to use and enjoy her dwelling that other residents enjoy.[7]

Defendants advance several other arguments. First, defendants contend that they reasonably accommodated Hubbard's handicap by renting her an apartment at more than $100 less than the legally permitted rent for that apartment. However, there is no evidence that the amount of Hubbard's monthly rent reflected any consideration of her physical condition.

Second, defendants argue that they should not be held liable for not making a parking space available to Hubbard prior to December 2, 1995 because they were not convinced that Hubbard was handicapped within the meaning of the Fair Housing Act. Defendants note that, although Hubbard walked with a cane, she seemed to do so without great difficulty. Although Hubbard must ultimately prove that she was handicapped in order to prevail, the defendants, by stipulating that Hubbard is handicapped, have waived their right to challenge, on this motion, whether Hubbard was disabled prior to December 2, 1995.

Additionally, at no time prior to this lawsuit did defendants question Hubbard's handicapped status or ask for any proof of her disability, as landlords may be required to do if they doubt a tenant's claim of being handicapped. "If a landlord is skeptical of a tenant's alleged disability ... it is incumbent upon the landlord to request documentation or open a dialogue." *Jankowski Lee*, 91 F.3d at 895. Indeed, Hubbard likely could have provided such documentation. During the entire time of her residency at Sleepy Hollow, she displayed in her car a New York state handicapped tag that entitled her to park in zones designated "handicapped parking." That Hubbard was issued a handicapped sticker created a presumption, and placed defendants on notice, that Hubbard was entitled to the protections afforded disabled individuals, including the Act's prohibitions on discrimination on account of disability.

Third, defendants argue that because Hubbard could afford to pay the monthly fee for a reserved parking space, they should not be required to provide a space for free. Whether Hubbard could afford to pay the fee is irrelevant because the contemplated accommodation does not require the waiver of a generally applicable fee. A tenant's ability to pay should only be considered when the contemplated accommodation involves a waiver of a generally applicable fee. *See, e.g., California Mobile Home Park I* at 1418 (in the case of a generally applicable fee, putting forth a balancing test that considers, among other things, the plaintiff's ability to pay); *Samuelson v. Mid–Atlantic Realty Co.*, 947 F.Supp. 756, 761 (D.Del.1996) (same). Because Sleepy Hollow tenants are not required to pay a monthly fee in order to park in reasonable proximity to their apartments, Hubbard's ability to pay is immaterial.[8]

Finally, defendants note, correctly, that if they were required to supply free, reserved parking for Hubbard, they might be similarly required to provide parking near the apartment of every handicapped tenant in the complex. If the current allocation of parking spaces disadvantages handicapped tenants, then Samson might indeed be required to allocate parking so as to assure handicapped tenants an opportunity equal to that of their

7. However, it is understandable that Samson would not want to set a precedent of reserving the most desirable parking spaces for specific tenants, handicapped or not. For this reason, the designation of a space especially for Hubbard would be required only if the creation of handicapped spaces was insufficient to provide her an opportunity to use and enjoy her dwelling equal to that of non-handicapped tenants.

8. Of course, if defendants had required that all tenants pay a monthly fee in order to park at Sleepy Hollow, then a balancing test that considered Hubbard's ability to pay would have been appropriate. For example, in *California Mobile Home Park I*, the court called for an examination of an unusually large number of factors, including "the amount of fees imposed, the relationship between the amount of fees and the overall housing cost, the proportion of other tenants paying such fees, the importance of the fees to the landlord's overall revenues, and the importance of the fee waiver to the handicapped tenant." *Id.* at 1418.

non-handicapped neighbors to use and enjoy their dwelling.[9]

Although the defendants did not accede to Hubbard's request for a free parking space solely for her use, they did offer to designate three formerly unreserved parking spaces throughout the complex as "handicapped." Whether this option would have met defendants' legal obligation to accommodate reasonably Hubbard's disability turns on whether at least one of the spaces would have been sufficiently close to Hubbard's apartment and whether the space would, in fact, have been available for Hubbard's regular use. Only if the answers to both of these questions are "yes" would the handicapped parking proposal have satisfied the defendants' obligation to reasonably accommodate Hubbard's handicap.

Although the parties agreed that the space closest to Hubbard's apartment was certainly close enough to afford her an opportunity equal to that of other tenants to use and enjoy her dwelling, the parties apparently did not agree how close was "close enough." Of the three handicapped spaces proposed by the defendants, the one closest to Hubbard's apartment was, according to the defendants, approximately 30 yards from her unit. Hubbard apparently deemed that space too far to allow her reasonable access to her apartment. How close a space would be required depends in part, of course, on the severity of the plaintiff's handicap. Assuming that at least one space was "close enough," the space might nonetheless have been insufficient to constitute a reasonable accommodation if the demand for the space prevented Hubbard, as a practical matter, from regularly parking there. Defendants would have then been required to designate enough additional handicapped spaces for Hubbard to be assured of the availability of a space near her apartment.

9. Defendants further contend, incorrectly, that such a requirement would be financially burdensome to the landlord. Because the only parking close to many units, Hubbard's among them, is free, unreserved parking, those handicapped tenants in need of parking near their apartment likely currently park in the unreserved free areas anyway. Thus, providing additional "handi-

In sum, whether the defendants offered to create, for Hubbard's benefit, enough handicapped parking sufficiently near her apartment to afford her an equal opportunity to use and enjoy her dwelling is a factual issue that cannot be resolved on this motion for summary judgment.

In light of defendants' stipulation regarding Hubbard's handicap and the lack of evidence that defendants made any offer of accommodation prior to December 2, 1995, this Court concludes that defendants, during the period from July 18, 1995 to December 2, 1995, discriminated against Hubbard on the basis of handicap in violation of the Act. During this period, the defendants did not offer Hubbard, with or without charge, any parking space near her apartment. Defendants' proposal to designate a fee paid space for Hubbard also did not constitute a reasonable accommodation. Thus, the defendants violated Hubbard's rights under the Act at least until they offered to create three handicapped parking spaces throughout Sleepy Hollow.[10]

**CONCLUSION**

For the reasons stated, the motions of the United States and Susan L. Hubbard for summary judgment on the issue of liability are granted in part, as to the period from July 18, 1995 to December 2, 1995. The motions of the United States and Hubbard are otherwise denied. The defendants' motion for summary judgment is denied.

**SO ORDERED:**

capped" would have little if any effect on the demand for fee paid, reserved parking.

10. From the materials submitted in connection with this motion, it is unclear whether the defendants proposed the 3 handicapped spaces on December 2 or sometime thereafter.