**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1770-19

MICAELA P. BENNETT,

     Plaintiff-Appellant,

v.

STATE OF NEW JERSEY,

     Defendant-Respondent,

and

ELIZABETH CONNOLLY,
DAWN HALL APGAR, LYNN
KOVICH, CHRISTINA MONGON,
LISA CIASTON, and THERESA
McQUAIDE,

     Defendants.

_____

Argued May 26, 2021 – Decided July 20, 2021

Before Judges Alvarez and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1774-15.

Claudia A. Reis argued the cause for appellant (Lenzo & Reis, LLC, attorneys; Claudia A. Reis, of counsel and on the briefs).

Therese M. Taraschi argued the cause for respondent (Brown & Connery LLP, attorneys; Christine P. O'Hearn and Therese M. Taraschi, on the brief).

PER CURIAM

After a lengthy trial, a jury returned a no cause of action verdict against plaintiff Micaela P. Bennett, who had sued defendants State of New Jersey, Elizabeth Connolly, Dawn Hall Apgar, Lynn Kovich, Christina Mongon, Lisa Ciaston, and Theresa McQuaide under the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, and the Law Against Discrimination (the LAD), N.J.S.A. 10:5-1 to -42. Plaintiff was employed by the Division of Mental Health and Addiction Services (DMHAS) as a legal specialist assigned to Greystone Park Psychiatric Hospital. Substantial motion practice preceded the trial on plaintiff's fourth amended complaint alleging that defendants violated CEPA by creating a hostile work environment, and violated the LAD by terminating her. We affirm.

We very briefly describe the facts, as plaintiff's challenges on appeal focus solely on questions of law regarding her claims of error in the jury charge. Plaintiff alleged her relationships with her supervisors deteriorated when in

2015 and 2016, she began to voice concern that Greystone was failing to discharge disabled patients into the community as promptly as the law required. She was also concerned about the directive of the Administrative Office of the Courts (AOC) requiring courtroom guards to be armed, believing they were not adequately trained. Coworkers began to complain about plaintiff, and supervisors began to complain to her, regarding her confrontational tone. She routinely involved senior administrators in problems she perceived in the workplace without affording her immediate supervisors a preliminary opportunity to address the issues.

Supervisors met with plaintiff on November 21, 2014, in the hopes of improving her working relationship, or at least toning down her communications, with one of the meeting attendees. In their view, plaintiff adopted a disrespectful and angry tone in her interactions with others, possibly when a promotion, and then a lateral move, failed to materialize. Two supervisors met with plaintiff again on October 28, 2015, to discuss their perception of her insubordinate and offensive emails, and her disruptive and unproductive tone during meetings. The frequency with which coworkers and medical staff complained about plaintiff itself had become an administrative problem.

3

Management imposed a five-day suspension on plaintiff in September 2016 because she refused to sign and return an ethics and confidentiality form that had been sent to her earlier in the year, in April. Plaintiff believed that, despite her repeated requests for clarification regarding the meaning and practical effect of some of the language, no satisfactory response had been made. She admitted being advised before the suspension that failure to sign and return the form would result in disciplinary action. After her suspension, plaintiff did sign the receipt, but noted on the form that she did so "under duress and threat of removal of employment, despite questions . . . ."

Plaintiff was well aware of the concerns regarding her interactions with others, which she in turn perceived to be a lack of support on the part of her supervisors and outright retaliation. She acknowledged being told to make her emails less confrontational and disrespectful.

The incident which precipitated plaintiff's termination occurred when she contacted a friend who was a Chief Executive Officer (the CEO) at Greystone to inform her that a news article circulated in-house was reporting her retirement. The CEO had been on medical leave since May 2017, had not been asked to retire, and did not intend to; the information in the article was a mistake. On August 15, 2017, the Commissioner of the Department of Human Services,

having been contacted by plaintiff about the possible inequity implicated by the CEO's termination while she was on medical leave, emailed plaintiff's supervisors with an inquiry regarding the CEO's status. The Commissioner was told that it was a mistake, that the CEO was entitled to a medical leave, and that she would not be replaced unless and until she decided to retire on her own initiative. On August 21, 2017, plaintiff was called into a meeting, told she was an at-will employee, and told that her services were no longer needed.

One of plaintiff's supervisors testified at trial that the termination came after, essentially, four years of plaintiff being warned about taking a "scolding" tone towards her supervisors, and being instructed to communicate less confrontationally with them and with coworkers. The email regarding the CEO was viewed as the last straw.

Turning to the jury instructions, the judge followed the model charges. In discussing plaintiff's contention that her termination was illegal LAD retaliation, the court mentioned plaintiff's encouragement of the CEO to talk to an attorney about disability discrimination. The judge then added plaintiff's other contentions regarding adverse employer actions, connecting them to both the LAD retaliation claim and the claim of a hostile work environment in violation of CEPA. This included plaintiff's assertions that defendants were angered by

5

her disclosures and objected to the numerous ways she believed they were tolerating violations of, or outright violating, a "law, rule, regulation or public policy," such as ignoring the rights of developmentally disabled patients to community placements, their right to timely determination of their status and eligibility for benefits, and their rights to be free of certain unsafe hospital conditions. Plaintiff had also claimed she was instructed to tell a judge that all patient units had a treating psychiatrist, as required by regulation, when that was not true. Finally, plaintiff alleged that defendants retaliated because she expressed a plan to institute legal action and then did so.

The court also charged the jury on defendants' factual contentions, including plaintiff's status as an at-will employee, and the two asserted reasons for terminating her. The first was "an ongoing pattern of insubordination and unprofessionalism in interactions and communications with her direct supervisor and [other] supervisors that did not improve despite repeated warnings and a five-day suspension without pay for insubordination . . . ." The second was plaintiff's inability to interact with her coworkers, resulting in numerous complaints being made about her for unprofessional behavior.

With regard to CEPA, the judge charged Model Jury Charges (Civil), 2.32, "New Jersey Conscientious Employee Protection Act ("CEPA") (N.J.S.A.

6

34:19-1 et seq.)" at 2 (rev. Apr. 2014). The model charge instructs judges that "[i]f one or more of the prima facie elements is in dispute, charge the relevant portion(s) of the following explanation of the plaintiff's prima facie burden . . . ." Ibid. The "following explanation" contains all the elements of the CEPA cause of action other than damages. Id. at 3-9. The model charge introduces the element of "causal connection," stating that it is for the jury to decide, notwithstanding that it also figured in some manner in the prima facie case: "[t]he following addresses the fourth and final element of plaintiff's prima facie case. It is also the ultimate issue to be decided by the jury . . . ." Id. at 6.

In this case, the jury instructions on the factual contentions were followed by the elements of the CEPA retaliation cause of action.[1] The court recited the model charge verbatim, and it inserted appropriate illustrations of the parties' contentions and arguments where called for. See Model Charge 2.32 at 1-9. Where the model charge stated that retaliation "does not need to be a single

_____

[1] Although plaintiff named termination as retaliation only in connection with her LAD claim, she has not objected to the court's statement that defendant "terminated her employment and/or subjected her to a hostile work environment" in violation of CEPA. She likewise refrains from objecting to its naming of termination alone, without hostile work environment, as the adverse employer action within one part of the causation section of the CEPA charge. The jury sheet correctly correlated the harms and the causes of action. It named unelaborated "retaliat[ion] against her" as the CEPA violation, while naming "terminat[ion of] her employment" as the LAD violation.

7

incident" because "it can include many separate but relatively minor instances of adverse action," id. at 5, the court added the explanation that the latter "is commonly referred to as a hostile work environment."

The LAD model jury charge echoes the CEPA model jury charge by instructing trial judges that "the court should not charge the prima facie elements of the plaintiff's case, unless those elements remain at issue at the time of trial, having not already been decided as a result of motion practice either at the summary judgment stage or at the close of evidence at trial," or by stipulation of the parties. Model Jury Charges (Civil), 2.22, "Unlawful Employment Practices Under the New Jersey Law Against Discrimination (LAD)— Retaliation (N.J.S.A. 10:5-12(d) and -12(r))" (rev. Jan. 2019).

As it did for the CEPA counts, the court recited the model charge verbatim and added appropriate illustrations. See Model Charge 2.22 at 3-9. The actual words "prima facie case" were not read to the jury, nor were the mechanics of the burden-shifting framework used in LAD and CEPA cases.

The court did not mention the term "proximate cause" until it addressed damages, and neither did the verdict sheet. The court read the entirety of the model charge. See Model Jury Charges (Civil), 6.10, "Proximate Cause— General Charge" (rev. Nov. 2019). However, in reading the language about the

threshold for finding proximate cause, it incorrectly used the definite article in one instance instead of using the indefinite article exclusively:

> Proximate cause. If you find that Defendant State of New Jersey retaliated against the plaintiff, you must find that the defendant's actions were <u>a</u> proximate cause of the damages alleged by the plaintiff. It is the duty of the plaintiff to establish by a preponderance of the evidence that the retaliation committed by the defendant was <u>the</u> proximate cause of the alleged damages. The basic questions for you to resolve is [sic] whether plaintiff's damages are so connected with the actions of the defendant that you decide it is reasonable in accordance with the instruction I am giving to you, that defendant should be wholly or partially responsible for the damages.
>
> [(Emphasis added).]

Emphasis added. The verdict sheet did not make the same mistake. In the question concerning liability for damages, it asked the jury whether plaintiff had "proven by a preponderance of the evidence that she suffered damages as a proximate cause of the actions of the defendant, State of New Jersey . . . ."

On appeal, plaintiff raises the following points of error:

<u>POINT ONE</u>

THE COURT ERRED BY CHARGING THE JURY THAT IT WAS REQUIRED TO FIND THAT DEFENDANT[S'] CONDUCT WAS THE "PROXIMATE CAUSE" OF PLAINTIFF'S DAMAGES BECAUSE PROXIMATE CAUSE SHOULD NOT BE CHARGED IN LAD CASES AND

9

THE COURT ERRONEOUSLY INSTRUCTED THE JURY THAT LIABI[L]ITY COULD NOT ATTACH UNLESS DEFENDANT[S'] ACTIONS WERE THE SOLE PROXIMATE CAU[SE] OF THE PLAINTIFF'S DAMAGES.

POINT TWO

IT WAS ERROR TO CHARGE THE JURY ON THE PRIMA FACIE ELEMENTS OF THE LAD CLAIM BECAUSE THE PRIMA FACIE ELEMENTS BECAME IRRELEVANT ONCE THE DEFENDANT[S] ARTICULATED A LEGITIMATE, NON[-]DISCRIMINAT[OR]Y REASON FOR PLAINTIFF'S TERMINATION AND CHARGING THE JURY ON THE PRIMA FACIE ELEMENTS OF THE PARADIGM IS CONFUSING AND LIKELY TO MISLEAD GIVING RISE TO HARMFUL ERROR.

A.    It Is Inappropriate To Instruct The Jury On The Prima Facie Elements Of A LAD Claim Because Once The Defendant[s] Ha[ve] Established A Legitimate, Non-Discriminatory Reason For The Adverse Action, The Prima Facie Elements Become Irrelevant And The Only Issue Left For The Jury To Decide Is Whether The Plaintiff Was The Victim Of Intentional Retaliation.

B.    Charging The Jury On The Prima Facie Elements Is Erroneous Because The Prima Facie Elements Are Not Only Irrelevant After The Matter Has Been Fully Tried But They May Also Confuse And Mislead The Jury.

10

I.

Plaintiff's principal contention is that the trial judge erred because he charged the jury on the prima facie elements of her LAD claim, although he never used the term. She argues that the very essence of precedents regarding LAD claims make a prima facie case irrelevant once established, and that references to any prima facie element are unavoidably confusing and misleading.

Because "[a]ppropriate and proper charges to a jury are essential for a fair trial," State v. Green, 86 N.J. 281, 287 (1981), "erroneous instructions on material issues are usually presumed to be reversible error . . . ." State v. Crisantos, 102 N.J. 265, 273 (1986). Such errors are generally considered to be "poor candidates for rehabilitation under the harmless error philosophy." State v. Simon, 79 N.J. 191, 206 (1979); see Das v. Thani, 171 N.J. 518, 527 (2002) (establishing this principle applies to jury charges in civil cases).

Nonetheless, charges that do not mislead the jury into an incorrect application of the law are not grounds for reversal. Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 418 (1997). "Courts uphold even erroneous jury instructions when those instructions are incapable of producing an unjust result or prejudicing substantial rights." Ibid. (quoting Fisch v. Bellshot, 135 N.J. 374,

392 (1994)).  "Reversible error . . . will not be found where the charge, considered as a whole, adequately conveys the law and is unlikely to confuse or mislead the jury, even though part of the charge, standing alone, might be incorrect."  Fischer v. Canario, 143 N.J. 235, 254 (1996).

The Model Jury Charges "should be followed and read in their entirety to the jury."  State v. R.B., 183 N.J. 308, 325 (2005).  If a model charge is "applied to a dispute" that was "contemplated" by its drafters, and read to the jury in a context that reflects "the specific purpose for which the charge was adopted," the trial court's "reliance" on it carries a "presumption of propriety."  Estate of Kotsovska ex rel. Kotsovska v. Liebman, 221 N.J. 568, 596 (2015).

## II.

To claim retaliation in violation of the LAD, employees must show that "(1) they engaged in a protected activity known by the employer; (2) thereafter their employer unlawfully retaliated against them; and (3) their participation in the protected activity caused the retaliation."  Craig v. Suburban Cablevision, Inc., 140 N.J. 623, 629-30 (1995).

CEPA protects employees from retaliation for some attempts to report what the employee perceives as misconduct:

An employer shall not take any retaliatory action against an employee because the employee does any of the following:

. . . .

c. Objects to . . . any activity, policy or practice which the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ;

(2) is fraudulent or criminal . . .; or

(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

[N.J.S.A. 34:19-3.]

A CEPA claim must be based on an "objectively reasonable belief" in the occurrence of activity that "is either illegal, fraudulent or harmful to the public health, safety or welfare," rather than an objection to the activity based on some other principle. Mehlman v. Mobil Oil Corp., 153 N.J. 163, 193 (1998). Accord Dzwonar v. McDevitt, 177 N.J. 451, 464 (2003). CEPA does not require the alleged activity to violate the law or public policy or otherwise be harmful, but rather only that the employee "reasonably believes" so. Estate of Roach v. TRW, Inc., 164 N.J. 598, 612-13 (2000). Accord Lippman v. Ethicon, Inc., 222 N.J. 362, 380 (2015).

Employees attempting to establish a violation of the LAD or CEPA must demonstrate a causal connection between their protected activity and the retaliation. Maimone v. City of Atl. City, 188 N.J. 221, 237 (2006). Causation "may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive," and the evidence of pretext may serve that function. Romano v. Brown & Williamson Tobacco Corp., 284 N.J. Super. 543, 550-52 (App. Div. 1995). Accord Maimone, 188 N.J. at 237-38. The temporal proximity of protected activity followed by an adverse employment action is usually insufficient by itself to establish the causal connection. Young v. Hobart W. Grp., 385 N.J. Super. 448, 466-67 (App. Div. 2005). Accord D.V. by D.V. v. Pennsauken Sch. Dist., 247 F. Supp. 3d 464, 472 (D.N.J. 2017).

The retaliation must be an adverse action that is "'serious and tangible' enough to alter an employee's compensation, terms, conditions, or privileges of employment, deprive her [of] future employment opportunities, or otherwise have a 'materially adverse' effect on her status as an employee." Hargrave v. Cnty. of Atl., 262 F. Supp. 2d 393, 427 (D.N.J. 2003) (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300-01 (3d Cir. 1997)). Accord Richter v. Oakland Bd. of Educ., 459 N.J. Super. 400, 417 (App. Div. 2019).

A-1770-19

The harm is to be determined under the objective standard of a "reasonable employee," so the employee's "subjective response to them is not legally significant in assessing whether they were materially adverse[,]" even if the employee's response was to find them "highly distressing . . . ." Prager v. Joyce Honda, Inc., 447 N.J. Super. 124, 140-41 (App. Div. 2016). Retaliation therefore requires more than ordinary rudeness and incivility, Sporn v. Ocean Colony Condo. Ass'n, 173 F. Supp. 2d 244, 251-52 (D.N.J. 2001), and more than actions that make the employee's job "mildly unpleasant" but do not "impact[] in a substantial way on [the plaintiff's] work or conditions at work . . . . " Hancock v. Borough of Oaklyn, 347 N.J. Super. 350, 360 (App. Div. 2002).

New Jersey applies the burden-shifting approach developed under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), as the general framework applicable to LAD claims. Grigoletti v. Ortho Pharm.Corp., 118 N.J. 89, 97-98 (1990). The approach also applies to CEPA retaliation claims. Massarano v. N.J. Transit, 400 N.J. Super. 474, 492 (App. Div. 2008).

The burden-shifting approach requires a plaintiff to establish a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. The burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason

for" its action.  Ibid.  The plaintiff then has the opportunity to demonstrate that the claimed reason for the action was pretextual.  Id. at 804.

In order to establish a prima facie case, a plaintiff must prove that the action at issue occurred "under circumstances which give rise to an inference of unlawful discrimination."  Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 253 (1981) (Burdine).  "The evidentiary burden at this stage is rather modest:  it is to demonstrate to the court that [the] plaintiff's factual scenario is compatible with discriminatory intent—i.e., that discrimination could be a reason for the employer's action."  Marzano v. Comput. Sci. Corp., 91 F.3d 497, 508 (3d Cir. 1996).  The prima facie case is to be determined "solely on the basis of the evidence presented by the plaintiff, irrespective of [the] defendants' efforts to dispute that evidence."  Zive v. Stanley Roberts, Inc., 182 N.J. 436, 448 (2005).

Once the prima facie case is established, the second part of the McDonnell Douglas test gives the employer the burden of producing evidence that it had "a legitimate, nondiscriminatory reason" for acting.  Burdine, 450 U.S. at 254. That is not a burden of persuasion, which "remains at all times with the plaintiff."  Id. at 253.  The employer only needs to "articulate" a nondiscriminatory reason for its action "with sufficient clarity so that the

16

plaintiff will have a full and fair opportunity to demonstrate pretext." Id. at 255-60.

Indeed, the employer never has the burden of proving that its proffered reason was the actual reason for its action, "because the burden of proving the actual discrimination lies at all times with the plaintiff." Bray v. Marriott Hotels, 110 F.3d 986, 990 (3d Cir. 1997). The employer's articulation must be "taken as true," and the court's evaluation of it during this second part of the McDonnell Douglas test "can involve no credibility assessment." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993).

If the employer articulates a nondiscriminatory reason, the plaintiff loses the benefit of the presumption established by the prima facie case. Burdine, 450 U.S. at 255-56. To survive the employer's motion for summary judgment, the plaintiff must present "evidence which: 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of" the action in question. Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994).

A-1770-19

The plaintiff's evidence of pretext may be indirect, Burdine, 450 U.S. at 255-58, or circumstantial, Mandel v. UBS/PaineWebber, Inc., 373 N.J. Super. 55, 75 (App. Div. 2004). It may even be simply the incredibility of the employer's proffered reason, which, in conjunction with the prima facie case, may be legally sufficient to support the inference that the alleged discriminatory reason was an actual one. St. Mary's, 509 U.S. at 511. Accord DeWees v. RCN Corp., 380 N.J. Super. 511, 528-29 (App. Div. 2005).

The plaintiff does not have to show that the prohibited reason was the employer's sole reason, but rather just that it may have been one of the employer's "but[-]for" reasons. Fuentes, 32 F.3d at 764. Accord Slohoda v. United Parcel Serv., 207 N.J. Super. 145, 155 (App. Div. 1986). However, while employers may not act for a prohibited purpose, they are free, when unlawful discrimination is not a factor, to make personnel decisions objectively or subjectively, and in a manner that is unpopular with the employees. Maiorino v. Schering-Plough Corp., 302 N.J. Super. 323, 345-46 (App. Div. 1997).

Mogull v. CB Commercial Real Estate Group, Inc., 162 N.J. 449, 452 (2000) (LAD claim of sex discrimination and retaliation), and Zive, 182 N.J. at 442-43, both address plaintiff's claim of error. In Mogull, the Court approved a charge similar to Model Charge 2.22, which the judge gave to the jury in this

case. The Court recommended that whether a plaintiff has established a prima facie case, and whether a defendant has articulated a non-discriminatory reason for its actions, should be initially resolved as a matter of law. Mogull, 162 N.J. at 471-73. Even where that occurs, however, a jury must still determine whether a discriminatory motive has been established, not just as a possibility, but by a preponderance of the evidence. Id. at 465.

In Zive, the jury charge addressed the point made in Mogull that the jury decides "the ultimate issue of whether [the plaintiff] has proved an act of discrimination by a preponderance of the evidence." Zive, 182 N.J. at 444. A prima facie case is assessed solely on the plaintiff's evidence, and if a matter is disputed at that stage, then the factual dispute remains in the plenary case and is a question for the jury to decide. Id. at 455-57. In other words, the threshold legal disposition differs significantly from the disposition made by a jury that includes contested facts.

The Court in Zive observed that a jury, while not instructed on the prima facie case, "will necessarily consider an employee's performance when it decides the ultimate question of whether the employee was fired as a result of discrimination." Id. at 458. Factual disputes regarding an employer's performance expectation, and whether reasons other than plaintiff's job

A-1770-19

performance contributed to termination, "remained for full debate" to the jury "in the second and third phases of the McDonnell Douglas paradigm, . . . as part of [the] plaintiff's case-in-chief, or as part of [the] defendant's substantive defense." Id. at 456-57. As we had explained, "[t]here [i]s no need for the jury to consider performance specifically in the context of the prima facie case," because "[t]he issue of [the] plaintiffs' job performance for the purpose of establishing a prima facie case is distinct from the issue of their job performance for the purpose of refuting [the] defendants' legitimate, non-discriminatory reason for their terminations" in the plenary case. Baker v. Nat'l State Bank, 312 N.J. Super. 268, 283-84 (App. Div. 1998).

But once an employer successfully puts forth proof refuting the prima facie case's presumption of discrimination, the factual inquiry of necessity "proceeds to a new level of specificity." Burdine, 450 U.S. at 255. The credibility of the employer's reasons for its actions will be assessed by the jury in its determination of whether plaintiff has met the ultimate burden of establishing a discriminatory reason for the adverse action. St. Mary's, 509 U.S. at 508-11.

The plaintiff retains the burden of convincing the jury "that the proffered reason was not the true reason for the employment decision." Burdine, 450 U.S.

at 255-56. That burden "merges with the [plaintiff's] ultimate burden of persuading the court that she has been the victim of intentional discrimination." Ibid. A plaintiff must make a showing "either directly by persuading the court that a discriminatory reason more likely motivated the employer[,] or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. at 256.

Model Charge 2.22 and Model Charge 2.32 are in accord with these precedents. The trial judge charges the jury it must decide the material facts that are in dispute, and avoids references to the mechanism by which the court evaluated the prima facie case and the legal sufficiency of the employer's articulated response, if true. Like the case law, the model charges manifestly do not remove disputed facts from the jury just because those facts were implicated in earlier stages, where the threshold showings were made to a substantially lower standard than the plenary standard of preponderance of the evidence.

The federal cases plaintiff relies upon do not support her argument. All stand for the principle that a factual question presumptively answered in a plaintiff's favor for purposes of assessing a prima facie case does not equate to a plenary determination of the question. That determination is deferred to the jury, and the jury must decide it anew under a higher standard, as long as it is

relevant to identifying the employer's articulated reasons and assessing whether those reasons were pretextual.

The presumptive answer to a factual question when the prima facie case is weighed is simply different from a jury's determination of whether a plaintiff met the plenary burden of proof. A jury's fact-finding will be more rigorous and include a final judgment on the factual conflicts presented in light of the defendant's evidence as well as the plaintiff's. Asking the jury here whether a causal connection existed between the alleged retaliation and conduct protected under the LAD or CEPA was not a legal error.

## III.

Plaintiff further claims the court erred by charging the jury on proximate cause in connection with damages, specifically, that the court erred in charging the jury by straying from the model jury charge, saying that defendants' misconduct needed to be "the" cause of her damages rather than just "a" cause. This claim also lacks merit. The judge tracked the model jury charge but for his slip of the tongue in saying "the" instead of "a" on one occasion, although he correctly read the charge on the other occasion he referred to the standard. Furthermore, the verdict sheet correctly used "a" cause, not "the" cause.

Ultimately, the issue of proximate cause is irrelevant, as the jury did not reach the damages question.

To the extent we do not address them, plaintiff's remaining arguments lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION